In re AMERICAN ENERGY,
INC., Debtor.

Gary E. CAMERON, Trustee, Plaintiff,

v.

Loren D. ANDERSON; Arlo Andrews; Dale V. Benson; Gene Berger; Quiren L. Braun; Gregory K. Boyer; Jerry Briks; Glen Danielson; John Doshadis; Douglas Erickson; James A. Goerdt; James Greenmyer; Carl Hansen; Rodney Iverson; Bertice Jacobson; Dale M. Klingberg; Clayton Litchfield; Francis Litchfield; Rochelle Litchfield; Erwin Lugert; Dennis A. Mahoney; Forrest Nordmark; Michael Oleary; Lloyd Pearson; Gerald Peters; Cecil Poss; Lloyd Ptacek; Warren E. Rau; Alfred Renner; Dennis L. Sandberg; Kenneth A. Spitzer; Paul A. Spitzer; Clarmont Ulven; Glenn Van Ningen; Bernard Vculek; and Darrell Wallace, Defendants.

Bankruptcy No. 84–05566.
Adv. No. 85–7052.

United States Bankruptcy Court,
D. North Dakota.

June 11, 1985.

Jay D. Carlson, Fargo, N.D., for plaintiff.

Bruce H. Carlson, Timothy Q. Davies, Fargo, N.D., Michael M. Fluegel, Morris, Minn., for defendants.

## ORDER OF ABSTENTION

WILLIAM A. HILL, Bankruptcy Judge.

The Debtor, American Energy, Inc. (AEI), is a corporation organized as a producers' cooperative association to perform marketing and other functions for member growers and in connection therewith, it was to construct a facility at Hankinson, North Dakota, for the processing of grain into anhydrous ethyl alcohol and other products. Growers who constituted the membership of AEI agreed through individual contracts called "Growers Grain Supply Agreement" to unconditionally supply AEI and its assignees quantities of grain over a seven-year period. Approximately 1,140 individual contracts were signed by various farmers. The grower contracts were signed allegedly in consideration of certain enumerated obligations and promises of AEI, among them being the construction and operation of the anhydrous ethyl alcohol plant. AEI assigned its rights under the contracts to Beneficial Finance Leasing Corporation, Leasing and Industrial Lending Division of New Jersey, as collateral for loans made by Beneficial to AEI. The growers have allegedly failed to perform according to the terms of the contracts despite demands for the same being made by AEI and Beneficial.

AEI filed a petition for relief under Chapter 7 of the Bankruptcy Code on November 14, 1984. The Chapter 7 Trustee, on May 3, 1985, commenced the present adversary proceeding against 36 of the growers in an effort to collect sums allegedly due AEI on account of their respective contracts. The Trustee has couched his Complaint as one for turnover under section 542 and seeks a mandatory injunction compelling the Defendants to perform according to the terms of their respective contracts. Damages for breach of contract are also requested.

Five of the named Defendants in identical Answers allege the contracts are unenforceable for failure of consideration, unconscionability and lack of mutuality of obligation. They further allege AEI anticipatorily breached the contracts in that it did not construct the alcohol plant—a condition precedent to grower performance. They have counterclaimed for rescission and ask in the alternative for a jury trial or abstention by the Bankruptcy Court. Seven other Defendants in a joint Answer allege the contracts to be unconscionable, without consideration, and the product of mistake and misrepresentation. These Defendants also affirmatively allege anticipatory breach as a defense and also demand a jury trial.

The Defendants, by their Answers, have directly raised the issue of whether the Bankruptcy Court has jurisdiction over the Trustee's cause of action as framed by the Complaint. It is this issue which is now addressed.

1.

Under the Bankruptcy Amendments and Federal Judgeship Act of 1984 (1984 Act), the bankruptcy court has no general grant of jurisdictional authority but is restricted by the provisions of 28 U.S.C. § 1334 which specifies the legal controversies that can arise before a bankruptcy court. This grant of jurisdiction may be broken down into four categories:

(1) All cases under Title 11;

(2) All civil proceedings arising under Title 11;

(3) All civil proceedings arising in cases under Title 11; and

(4) All civil proceedings related to cases under Title 11.

This grant of jurisdiction to the bankruptcy court exists only with regard to those claims or causes of action which are capable of being included in at least one of the foregoing categories. The first category, "cases under Title 11", is distinct from the other three and simply means the original bankruptcy petition itself from which all other bankruptcy proceedings spring. A civil proceeding "arises" under Title 11 when it is the type of proceeding typically associated with bankruptcy adjudication. 28 U.S.C. § 157 has made an effort to define these types of proceedings as being "core" proceedings. They are those types of proceedings which spring from the operation and application of the Bankruptcy Code itself. A civil proceeding "arising in a case" under Title 11 is the type of claim or proceeding that secondarily springs from a pending case which arose under Title 11. The final category is made up of those proceedings which do not arise under Title 11 or in a case under Title 11 but are nonetheless "related" to cases under Title 11.

The bankruptcy court may hear all cases in each of the four categories but may determine, that is to say, resolve by entry of judgment, only those cases under Title 11 and all core proceedings arising under Title 11 or arising in a case under Title 11. As for the last category, non-core proceedings related to a case under Title 11, the bankruptcy judge may hear the case but may not render a final judgment. The bankruptcy judge's authority over non-core proceedings which are related to a case under Title 11 is restricted to hearing the case and submitting proposed findings of fact and conclusions of law to the district court who in turn enters final judgment. *See* section 157(c)(1). If the parties consent, however, the district court may allow the bankruptcy court to also enter final judgment in such cases.

■ The term "core" proceedings is not defined in the Bankruptcy Code but, by enumerated illustrations set out in section 157(b)(2), was meant to encompass those proceedings which would not exist at law in absence of the Bankruptcy Code. One court has defined the term as including those proceedings at the core of the bankruptcy court's power—proceedings which would have no existence outside of a bankruptcy proceeding. *In re Seton-Scherr, Inc.*, 26 B.R. 563 (Bankr.D.Ohio 1983). Congress apparently was in favor of giving bankruptcy courts expansive jurisdiction through the various categories enumerated as core proceedings because a "core" proceeding, by definition, may also include the broad range of matters covering the administration of the estate as well as other proceedings affecting the liquidation of assets or adjustment of the debtor-creditor or equity security holder relationship. *See* 28 U.S.C. § 157(b)(2)(A) and (O). The apparent broad application that could be given to section 157(b)(2)(A) and (O) should, however, be tempered by *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) and the other categories of section 157(b)(2) which are more specific in their terminology. Although section 157(b)(2) was meant by Congress to be a non-exclusive list of what might be included in the term "core" proceedings, this Court does not believe the sections or categories should be interpreted or expanded so as to in effect emasculate the jurisdiction proscriptions of the *Marathon* case. Clearly, subsections 157(b)(2)(A) and (O) should not be interpreted to include related non-core proceedings since 28 U.S.C. § 157(c)(1) specifically prevents a bankruptcy judge from rendering final judgments in such instances. A common sense interpretation of the term "core" would dictate that it include only those proceedings which are specifically defined in subsection (b)(2)(B) through (N) or in the Bankruptcy Code itself. This is the interpretation which this Court believes is the most correct and which will be relief upon when the question is presented.

■ Although the Trustee cites section 542 of the Code as a basis for his cause of action, the Complaint as well as the Defendants' Answers and Counterclaims are

based solely upon contract law. As noted in the case of *In re Atlas Automation, Inc.*, 42 B.R. 246 (Bankr.E.D.Mich.1984), money which may come into an estate for whatever reason might be regarded as being included in a broad reading of section 157(b)(2)(O) or as "property of the estate" for which turnover under section 542 would be appropriate but, said the court, reading either section 157 or section 542 so as to include actions based on contract would ignore the jurisdictional infirmities sought to be corrected by the 1984 Act. The Trustee's cause of action in the instant case sounds in contract. This Court, in its decision of *In re Dakota Grain Systems, Inc.*, 41 B.R. 749 (Bankr.N.D.1984), recalled that it was a breach of contract action commenced by a debtor-in-possession that caused the United States Supreme Court to hand down the linchpin *Marathon* decision. The Supreme Court in that case specifically noted that an action for breach of contract "involves a right created by state law, a right independent of an antecedent to the reorganization petition that conferred jurisdiction upon a bankruptcy court...". The court in the *Atlas Automation* case was also faced with an action brought by a debtor-in-possession based upon contract theories and observed that in view of *Marathon:*

> "[I]t is doubtful that Congress intended this type of case to be tried by a bankruptcy court. Thus, although the perimeters of the definition of "turnover property of the estate" and "proceeding affecting the liquidation of the assets of the estate" are yet to be explored, they do not include actions of this type." 42 B.R. at 247.

From the foregoing analysis, this Court must conclude that the Trustee's cause of action in the instant case is not a core proceeding arising under Title 11 nor is it one arising in a case under Title 11. Accordingly, this Court does not have jurisdiction under section 157(b)(2) to hear and finally determine the case. As previously outlined, this does not preclude a bankruptcy judge from hearing the case and rendering proposed findings if, despite the fact that it is not a core proceeding, it is otherwise related to the case under Title 11.

As with "core" proceedings, the term "related" proceeding is not precisely defined in the 1984 Act. The emergency rule upon which the 1984 jurisdictional amendments were based does define, in a limited fashion, a "related" matter as being a claim which would have existed irrespective of the fact of a bankruptcy, including claims brought by the estate against persons who have not filed claims against the estate. In other words, the cause of action must in some way *relate* to the administration of the bankrupt estate. That is to say, there must be some reason why adjudication of the claim is better placed with the bankruptcy court as opposed to a state court. Giving a very broad definition to the term would transform every state-created cause of action into a federal matter merely because a debtor were involved, but this would be a jurisdictionally infirm construction. Courts construing the term "related" have said that it means that there must exist a direct relationship to the administration of the bankrupt estate. As noted in *Heagle v. Haug*, 19 B.R. 223 (Bankr.D.Ore.1982), "[T]here must be a reasonable nexus or logical connection between the civil proceeding for which jurisdiction is sought and the parent bankruptcy proceeding. A tenuous connection between the controversy and the debtor, his assets, and the administration of his estate will not support jurisdiction...". 19 B.R. at 224. The term for purposes of conferring jurisdiction has also been said to depend upon "the character of the *claims* asserted and the relationship of those *claims* to the bankruptcy proceeding rather than with the status of the parties as debtors or creditors." *Romeo J. Roy, Inc. v. Northern Nat'l Bank*, 32 B.R. 1008 (D.C.D.Me. 1983). Further guidance is afforded by the Tenth Circuit Court of Appeals in the recent case of *Matter of Colorado Energy Supply, Inc.*, 728 F.2d 1283 (10th Cir.1984) which defined a related proceeding as:

> "Related proceedings are those civil proceedings that, in the absence of a petition

in bankruptcy, could have been brought in a district court or state court..."

The Tenth Circuit, in the foregoing case, noted that the term related proceeding as referred to in the *Marathon* decision was given a narrow definition as pertaining only to the proposition that a "traditional state common-law action, not made subject to a federal rule of decision, and related only peripherally to an adjudication of bankruptcy under federal law, must, absent the consent of the litigants, be heard by an Article III court if it is to be heard by any court or agency of the United States". *Citing Marathon,* 458 U.S. at 92, 102 S.Ct. at 2882. This Court has taken the position in related proceedings based solely on state created contract law that the clear expression of both the United States Supreme Court and Congress cannot be ignored. *In re Dakota Grain Systems, Inc.,* supra. Such cases, although tangentially related to a pending bankruptcy proceeding, are not sufficiently related to the proceeding to confer jurisdiction on the bankruptcy court under 28 U.S.C. § 157(c)(1) unless there also exists an independent basis for federal jurisdiction.

### 2.

The question of whether a jury trial is available in a bankruptcy proceeding has always been a troublesome question, but it has become even more perplexing in light of the 1984 Act.

▮ Cases that can be properly characterized as "core" proceedings are those which are considered equitable in nature and for which traditionally no right to a jury trial exists. *In re Minton Group, Inc.,* 43 B.R. 705 (Bankr.S.D.N.Y.1983); *In re Sunair Intern, Inc.,* 32 B.R. 142 (Bankr. S.D.Fla.1983); *In re Professional Air Traffic Controllers Organization,* 23 B.R. 271 (Bankr.D.C.1982). Bankruptcy judges are free to hear and finally determine such cases because they are in the nature of an equitable proceeding. However, as to cases which can be characterized as "at law", the right to jury trial is made inviolate by the Seventh Amendment to the

United States Constitution, and this right is in a limited fashion referred to in 28 U.S.C. § 1411(a) as enacted by the Bankruptcy Amendments and Federal Judgeship Act of 1984:

Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury that an individual has under applicable non-bankruptcy law with regard to a personal injury or wrongful death tort claim.

The problem is that a comparison of section 1411(a) with its predecessor, 28 U.S.C. § 1480(a), strongly leaves one with the impression that a jury trial is no longer available in bankruptcy court except with regards to a personal injury or wrongful death tort claim. Former section 1480(a) now replaced by section 1411(a), provided that:

Except as provided in subsection (b) of this section, this chapter and Title 11 do not affect any right to trial by jury, in a case under title 11 or in a proceeding arising under title 11 or arising in or related to a case under title 11, that is provided by any statute in effect on September 30, 1979.

For whatever reason, Congress by striking the broader language of section 1480(a) from section 1411(a) left bankruptcy courts with a strong suggestion that the only right to trial by jury that is retained in bankruptcy matters is that of an individual in an action for personal injury or wrongful death under nonbankruptcy law. If this is a correct interpretation of section 1411(a), then it means that not only is a jury trial unavailable in core proceedings—the "equity" cases—but it is also unavailable in non-core related proceedings ("at law" cases) if those cases are to be heard by a bankruptcy judge as allowed by section 157(c)(1). Thus, a dichotomy arises between what is created by the Constitution as an inviolate right to trial by jury and the limited jurisdictional grant of authority to bankruptcy courts. At least one court, avoiding a discussion of section 1411(a), believed that section 157(a) vested the bankruptcy judge with the same authority to conduct a jury

trial as the federal district court but felt that even with such authority a jury trial in bankruptcy court would be pointless because, absent the parties' consent, such judgment would be only advisory in nature and subject to de novo review. *Macon Prestressed Concrete Co. v. Duke*, 46 B.R. 727 (D.C.M.D.Ga.1985). This Court, while agreeing with *Duke* as to the practicality of a bankruptcy judge conducting a jury trial, disagrees with that court's conclusion that bankruptcy judges are vested with the same power to conduct jury trials as are district judges. The Supreme Court in its *Marathon* decision was quite clear in its holding that the grant of Article III powers to bankruptcy judges was an unconstitutional delegation to an adjunct court. Of the Article III powers specifically mentioned by the Supreme Court was the power to preside over jury trials. *See In re Proehl*, 36 B.R. 86 (D.C.W.D.Va.1984). As this Court previously noted, section 157(a) should not be interpreted or expanded so as to emasculate the Supreme Court's decision.

Accordingly, this Court concludes that jury trials must remain available to cases "at law" (related non-core), but those cases cannot be heard by a bankruptcy judge if a jury trial is requested. If a jury trial has been requested and the case is one sufficiently "related" to the bankruptcy proceeding to remain in federal court, then the case should be heard by the federal district judge in the first instance. If a jury trial has been requested but the case, although "related", is based on state law with no independent basis for federal jurisdiction, then the bankruptcy court ought to abstain. Where no jury trial has been requested but the case is based primarily on state law and only incidentally related to the bankruptcy proceeding, the bankruptcy court ought to abstain because of the character of the claim asserted.

28 U.S.C. § 1334(c)(1) allows the court in its discretion to abstain in the interest of justice or in the interest of comity or in respect of state law. This Court believes the Trustee's cause of action in the instant adversary case is based solely on matters of state law, has no independent basis for federal jurisdiction and is only incidentally related to the bankruptcy proceeding. Moreover, the Plaintiff's cause of action is one "at law" rather than "at equity", and the parties thereto have a right to trial by jury—a right which cannot be accorded them in bankruptcy court. Accordingly, it is the opinion of this Court that in this case abstention is mandated, and the case must be dismissed on jurisdictional grounds.

IT IS SO ORDERED.