**In the Matter of CANDELERO SAND & GRAVEL, INC., Debtor.**

**CANDELERO SAND & GRAVEL, INC., Plaintiff,**

v.

**PALMAS DEL MAR COMPANY, Defendant.**

**PALMAS DEL MAR COMPANY, Plaintiff,**

v.

**CANDELERO SAND & GRAVEL, INC., Defendant.**

Bankruptcy No. 85–01640(A).

Civ. Nos. 86–0937 HL, 86–0779 HL.

United States District Court, D. Puerto Rico.

Oct. 28, 1986.

Elisa Bobonis, John M. Garcia, Law Offices, Hato Rey, P.R., for Candelero Sand & Gravel, Inc.

Maria Soledad Piñero, Palou & Miranda, Pedro Purcell, Hato Rey, P.R., for Palmas del Mar.

## OPINION AND ORDER

LAFFITTE, District Judge.

The two cases presently before this Court arise in the context of a Chapter 11 bankruptcy proceeding filed by the debtor herein, Candelero Sand & Gravel, Inc. ("Candelero"). Candelero operates a sand and gravel extraction business on real property leased from its creditor and lessor, Palmas del Mar Company ("Palmas"). Upon filing of the petition in bankruptcy by Candelero and its cessation of contractual royalty payments to Palmas, the latter company obtained judicial approval to bring a breach of contract and eviction action against Candelero in state court. This action was subsequently removed to the Bankruptcy Court upon Candelero's request.

Once having obtained the jurisdiction of the Bankruptcy Court, Candelero filed a counterclaim against Palmas, and a concurrent third party claim against the successor to Candelero's leasehold interest, Terrasa Enterprises. Candelero now seeks removal of these three adversary actions to the District Court for jury trial. Palmas, in turn, has requested remand of its original complaint against Candelero to state court, to enforce a default entered prior to removal of the action to the Bankruptcy Court.

After a careful review of the parties' moving papers, the nature of the adversary actions, and relevant statutory and case law, this Court finds that all three civil cases should properly be remanded to state court, for adjudication in accordance with this opinion.

## I. FACTS

Candelero is a corporation engaged in the business of sand and gravel extraction for sale to other commercial enterprises. Its sole extraction site and operational facilities consist of a 600,000 square meter tract of land located in Humacao, Puerto Rico, which is leased from creditor Palmas del Mar. The parties executed an "Extraction and Sale Concession Agreement" in November of 1984, providing that Candelero would pay Palmas a percentage royalty share of profits, based on the amount of sand and gravel extracted, in exchange for the right to conduct such business on the property. This arrangement continued until October of 1985, when the debtor became insolvent and ceased making any royalty payments to Palmas.

Shortly thereafter, on November 13, 1985, Candelero filed a petition in bankruptcy to effect a Chapter 11 reorganization. Because Candelero remained in control of the Humacao property as debtor-in-possession, Palmas requested leave from the Bankruptcy Court to bring a state court action to evict Candelero and recover the outstanding royalty payments. The Bankruptcy Court granted Palmas' request on December 23, 1985, and ordered the automatic stay imposed by 11 U.S.C. sect. 362(a) to be lifted pursuant to sect. 362(b).

Palmas del Mar therefore filed Civil Case No. 86–152 in the Superior Court of Puerto Rico, Humacao Section, seeking Candelero's eviction and damages for nonpayment of royalties. Although Palmas' civil complaint was dated November 25, 1985, Candelero did not file its answer with the Court until January 21, 1986. Candelero also asserted a counterclaim against Palmas del Mar for intentional interference with economic interest, and a concurrent third party claim against the successor to its leasehold interest in the Humacao property, Terrassa Enterprises.

Because Candelero's answer to the complaint was not timely, a default judgment was entered against the debtor in the civil action. However, on February 26, 1986, Candelero's request for removal of the civil action to Bankruptcy Court, was granted, so that the complaint, corresponding counterclaims, and third party action were deemed adversary proceedings in Bankruptcy Court.

Candelero subsequently moved the Bankruptcy Court for relief from the default

judgment granted on Palmas' civil complaint—a request that is still pending determination. Palmas del Mar, on the other hand, not only opposes the Request for Relief from Default, but has also moved to remand the entire civil action to the state court, on the grounds that the Bankruptcy Court is not properly vested with jurisdiction.

In addition, Candelero filed a Request for Jury Trial in its counterclaim and third party action, which was denied by the Bankruptcy Court on April 2, 1986. The propriety of this denial is now before the District Court on appeal from the Bankruptcy Court's order; however, we find it unnecessary to address this question because of our ruling on Candelero's subsequent Motion for Withdrawal of Reference.

As alluded to, Candelero also moved for Withdrawal of Reference, requesting that its counterclaim and third party complaint be removed from Bankruptcy Court to the federal District Court for trial by jury. Palmas is opposed to removal to the District Court, and has requested remand of these adversary matters to a state court forum.

Because we find that a preliminary determination of the Court's jurisdiction will frame the adjudication of the related issues pending before us (e.g., whether Palmas' default judgment against Candelero is to be enforced or set aside, and whether Candelero's Request for Jury Trial was properly denied), we address the jurisdictional question first and foremost.

## II. JURISDICTIONAL ANALYSIS

We are presented with three possible forums for these pending adversary actions: the U.S. Bankruptcy Court, where they are presently lodged; the Federal District Court, to which debtor Candelero seeks removal of its counterclaim and third party action; and the state court, where Palmas seeks to have all three of these adversary actions remanded for final adjudication. We turn first to the authority of the Bankruptcy Court, since it is now possessed of these matters.

## A. THE BANKRUPTCY COURT

The Bankruptcy Court is empowered to hear and decide "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. sect. 157(b). Thus, its jurisdiction is strictly circumscribed by statutory mandate to encompass only core proceedings, defined as "those proceedings which would not exist at law in the absence of the Bankruptcy Code," or which "spring from application and operation of the Bankruptcy Code itself." *In Re American Energy, Inc.*, 50 B.R. 175, 178 (D.N.D.1985).

Core proceedings are generally characterized as "those which are equitable in nature and for which no traditional right to a jury trial exists." *In Re American Energy, Inc., supra*, at page 178. They are those matters which are integral to adjudication of a bankruptcy petition, or which traditionally have been submitted to a bankruptcy court. *Gaslight Club, Inc. v. Official Creditors Committee*, 46 B.R. 209 (D.C.Ill.1985). "The term 'core' proceedings is not defined in the Bankruptcy Code but, by enumerated illustrations set out in [28 U.S.C.] section 157(b)(2), was meant to encompass those proceedings which would not exist at law in absence of the Bankruptcy Code." *In Re American Energy, Inc.*, 50 B.R. at page 178.

Accordingly, to determine whether any of the three adversary actions properly belongs in Bankruptcy Court, we must first evaluate each of them to ascertain whether they fall within the definition of a "core proceeding," as that term is used in the Bankruptcy Act.

■ Palmas del Mar's original civil action against Candelero is essentially a breach of contract claim for the latter's failure to pay royalties due under the parties' "Extraction and Sale Concession Agreement." Under the terms of the agreement (specifically, paragraph 16), Palmas was vested with power to terminate the contract in the event of such nonpayment. Palmas did so on November 7, 1985,

six days prior to the debtor's filing of the petition in bankruptcy.

A breach of contract action that arises prior to the debtor's filing in bankruptcy "involves a right created by state law, a right independent of and antecedent to the reorganization petition that conferred jurisdiction upon a Bankruptcy Court." *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 84, 102 S.Ct. 2858, 2878, 73 L.Ed.2d 598 (1982). As such, "it is clear that 'core proceedings' do not encompass separate state law contract actions. A different construction of sect. 157 would require explicit rejection of the *Marathon* mandate." *In Re Pierce*, 44 B.R. 601, 602 (D.C.Colo.1984).

Thus, even where a breach of contract action is one that will drastically affect both the debtor-creditor relationship and the assets of the estate, it is a matter "which, but for the intervention of bankruptcy, could have been brought in a state court," and therefore cannot be styled a core proceeding. *In Re Bokum Resources Corp.*, 49 B.R. 854, 866 (D.N.M.1985). A prepetition cause of action based on state common law, and related only peripherally to the bankruptcy itself, cannot be subject to final adjudication by the Bankruptcy Court. At most, the bankruptcy judge may submit proposed findings of facts and conclusions of law to the District Court for review. *In Re Morse Electric Co., Inc.*, 47 B.R. 234 (N.D.Ind.1985). Nonetheless, we find such an approach to be redundant, inefficient, and a waste of judicial resources, particularly when a state court forum is readily accessible and can render a timely adjudication. For these reasons, we find that the Bankruptcy Court is not an appropriate forum for Palmas' contract claim.

In so holding, we find Palmas' breach of contract action to be distinguishable from that involved in *In Re Corporacion De Servicios Medicos Hosp.*, 60 B.R. 920 (D.P.R.1986). In that case, the District Court found that the creditor's breach of contract claim against the debtor sought to "convey the turnover of the [estate's] essential asset." 60 B.R. at page 930. Because the debtor's contract to provide medical services was the *only* asset of the estate, the District Court found it to be a "core proceeding" under 28 U.S.C. sect. 157(b)(2)(*O*), as a "proceeding affecting the liquidation of the assets of the estate." We find this statutory provision inapposite to the case before us for a number of reasons. First, Candelero's bankruptcy is a reorganization proceeding under Chapter 11, not a liquidation under Chapter 7, as is specified by the statute. Secondly, its principal asset consists of an established and at one time profitable sand and gravel extraction business, including the equipment, business acumen, goodwill, and other tangible and intangible assets associated with an ongoing commercial enterprise. Although the lease agreement with Palmas was part of that business, it admittedly was not the estate's *only* asset, as in the *Corporacion De Servicios Medicos* case. Finally, because Palmas terminated the lease agreement in accordance with the terms of the contract one week prior to the debtor's filing in bankruptcy, the lease agreement cannot be termed "property of the estate" pursuant to 11 U.S.C. sect. 541.[1] This is quite different from the status of the contract in *Corporacion De Servicios Medicos*, in which the contract became property of the estate upon the debtor's filing in bankruptcy, and the initial adversary proceeding filed by the debtor's principal creditor was an action for injunctive and declaratory relief, seeking termination of the contract. Given the substantial factual differences between these two cases, we do not

---

1. 11 U.S.C. 541(a)(1) provides:

"The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property ... all legal or equitable interests of the debtor in property as of the commencement of the case."

Since Palmas legally terminated the contract before Candelero's filing of the petition, Candelero had no interest therein, and lease agreement did not become the property of the estate.

view *Corporacion De Servicios Medicos'* statutory analysis as applicable to the matters before us. Instead, we deem Palmas' breach of contract action to be a "noncore," related proceeding outside the purview of the bankruptcy court.

■ We turn next to Candelero's counterclaim against Palmas, a tort action alleging intentional interference with business relationship. Although at first blush this action appears to qualify as a core proceeding under 28 U.S.C. sect. 157(b)(2)(C), which includes "counterclaims by the estate against persons filing claims against the estate," a closer analysis shows that it does not fit within this category. To merit classification as a core proceeding within the meaning of the statute, the nexus of the counterclaim itself "must be a 'core' proceeding as that term is used in section 157(b)(1); that is to say, it must arise under or arise in a case under Title 11." *In Re Nanodata Computer Corp.*, 52 B.R. 334, 342 (W.D.N.Y.1985). In other words, a debtor's counterclaim "does not become 'core' simply because it is technically or arguably within a given (b)(2) description." *Nanodata, supra*, at page 341.

By the same token, Candelero's third party claim against Terrassa Enterprises, which is also an action for tortious interference with business relationship, cannot be labeled a core proceeding. In *In Re Morse Electric Co., Inc.*, 47 B.R. 234 (N.D.Ill. 1985), the Bankruptcy Court found that the debtor's suit alleging "bad faith injury to business by a third party who was not a creditor," (like defendant Terrassa Enterprises), fell "squarely into the 'noncore' category as a prebankruptcy state common-law action related only peripherally to the bankruptcy itself." 47 B.R. at page 237. For these reasons, we find that neither the counterclaim nor the third party claim may appropriately be deemed core proceedings.

Having determined that none of these three civil actions qualifies as a core proceeding, we hold that they are improperly before the Bankruptcy Court pursuant to 28 U.S.C. sect. 157(b) and the strictures of the *Marathon Pipeline* case. We now examine whether the District Court may assert jurisdiction over these cases, as Candelero has requested, or whether it is constrained from doing so by the abstention provisions of 28 U.S.C. sect. 1334, as Palmas del Mar contends.

### B. THE FEDERAL DISTRICT COURT

28 U.S.C. sect. 1334(c) sets forth the grounds upon which both mandatory and discretionary abstention by the District Court are proper. Under 1334(c)(1), the District Court may decline to review any matter, even one which meets the definition of a "core" proceeding, if principles of fairness or deference to state law justify such voluntary abstention.[2] Section 1334(c)(2), in turn, mandates that the District Court refrain from adjudicating a related state law claim or cause of action where no basis for federal jurisdiction exists, and the matter can be timely heard in state court.[3]

■ Having determined that the complaint, crossclaim and third party action before this Court are all "noncore," related proceedings, and that there is no independent source of federal jurisdiction, it is clear that we must abstain from hearing these adversary matters pursuant to 28 U.S.C. 1334(c)(2). "The grant of jurisdic-

---

**2.** "Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. sect. 1334(c)(1) [Supp.1986].

**3.** "Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or aris-

ing in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise." 28 U.S.C. sect. 1334(c)(2) [Supp.1986].

tion under 28 U.S.C. 1334(c)(1) and (2) limits even the District Court to mandatory abstention if the matter can be timely adjudicated in a State forum of appropriate jurisdiction." *In Re Historic Lower Mill Ass.*, 49 B.R. 66, 67 (W.D.N.Y.1985). Accordingly, the "district court must abstain from hearing a purely state law claim where there is no other basis for federal jurisdiction other than its relatedness to a bankruptcy proceeding (including one where the debtor is a party) and where the claim can be timely adjudicated in state court." *State Bank of Lombard v. Chart House*, 46 B.R. 468, 472 (N.D.Ill.1985). Candelero has failed to profer *any* basis of federal jurisdiction over the subject cases in its Motion for Withdrawal of Reference, and upon examining the gravamen of each action, we are likewise unable to discern any grounds upon which this Court could assert jurisdiction.

Given that the three adversary actions before this Court meet the elements for mandatory abstention set forth in 28 U.S.C. sect. 1334(c)(2), we are compelled to follow Congressional mandate and refrain from hearing these matters. *Allen County Bank & Trust Co. v. Valvmatic Intern.*, 51 B.R. 578 (N.D.Ind.1985); *State Bank of Lombard v. Chart House, supra; In Re Dakota Grain Systems, Inc.*, 41 B.R. 749, 751 (D.N.D.1984).

### C. THE STATE COURT

By a jurisdictional process of elimination, this Court concludes that the proper forum to adjudicate these three related actions is the Insular court in which they originated. The *sine qua non* of each of these adversary actions is a Commonwealth law claim that can and should be resolved by a Commonwealth tribunal. Because these cases are all in the initial pleading stages, and have not had their discovery shaped by federal or bankruptcy court directives, no prejudice will result from their remand to the Superior Court. Thus, they can be timely adjudicated as required by 28 U.S.C. sect. 1334(c)(2). Moreover, we believe that remand of these actions to the Superior

Court furthers the interests of judicial economy and comity between the tribunals. The issues presented by the three adversary actions are questions of "well-settled state law," which present no independent basis for federal jurisdiction. Remand to Insular court is therefore appropriate.

### CONCLUSION

1. Palmas del Mar's Motion to Remand its breach of contract and conversion action against Candelero (Civil case number 86–0937 HL) to Commonwealth court is hereby GRANTED. The Superior Court of Puerto Rico, Humacao Section, is hereby directed to hear and decide Candelero's Motion for Relief from Default Judgment.

2. Candelero's Motion for Withdrawal of Reference, requesting removal of all three adversary actions to the District Court is DENIED. Because both the Bankruptcy Court and the federal District Court are without jurisdiction, and because it will serve to facilitate the prompt and efficient resolution of these matters, we are also ordering Candelero's counterclaim and third party claim (Civil case number 86–0779 HL) REMANDED to Commonwealth court.

3. Candelero's Request for Jury Trial is rendered moot by our decision to remand these adversary actions to Commonwealth court. We therefore decline to address this issue.

WHEREFORE, Civil cases numbers 86–0937 HL and 86–0779 HL are hereby REMANDED to the Superior Court of Puerto Rico, Humacao Section, for further proceedings in accordance with this opinion.

IT IS SO ORDERED.