**In re AK SERVICES, INC., Debtor.**

**SOUTHERN MARINE AND INDUSTRIAL SERVICES, INC., Plaintiff,**

**Shawmut Bank, N.A., Plaintiff–Intervenor,**

v.

**AK ENGINEERING, INC. a/k/a AK Services, AK Services, Inc., Fore River Shipyard & Iron Works, Inc., AK Technical Services Mid–Atlantic, Inc., Patrick Canonica, Carl Franson, and Patrick Hickey, Defendants,**

v.

**AMERICAN OVERSEAS MARINE CORPORATION and General Ship Corporation, Reach and Apply Defendants.**

**Bankruptcy No. 93–14887–JNF.
Adv. No. 93–1515.**

United States Bankruptcy Court, D. Massachusetts.

Sept. 24, 1993.

Nina M. Parker, Boston, MA, for debtor.

Michael B. Feinman, Andover, MA, and Edward Kutchin, Boston, MA, for plaintiff, Southern Marine and Indust. Services.

Andrew M. Troop, Boston, MA, for plaintiff-intervenor Shawmut Bank.

Paul F. Denver, Boston, MA, for defendants, Patrick Canonica, Carl Franson, Patrick Hickey.

Joseph S.U. Bodoff, Boston, MA, for AK Engineering as Trustee Mortgagee.

J. Michael Faherty, Gloucester, MA, for defendant, Fore River Shipyard Ironworks, Inc.

Brian Levy, Boston, MA, for defendant, AK Engineering, Inc.

Kenneth W. Gurge, Boston, MA, for Reach and Apply defendant General Ship Corp.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

### I. INTRODUCTION

The matter before the Court is the "Motion for Remand of Adversary Proceedings or Alternatively, for Abstention from Proceedings" filed by Southern Marine and Industrial Services, Inc. ("Southern Marine"), the Plaintiff in the above-captioned adversary proceeding that was removed to this Court from the Suffolk Superior Court on July 9, 1993 by AK Services, Inc. ("AK Services" or the "Debtor"), pursuant to Fed.R.Bankr.P. 9027.[1] The Debtor filed an opposition to the motion, as did other parties in interest, including 1) Joseph S.U. Bodoff, Trust Mortgagee of AK Engineering, Inc. ("AK Engineering"); 2) Shawmut Bank, N.A. ("Shawmut" or the "Bank"), Plaintiff–Intervenor in the Suffolk Superior Court action and the purported holder of a perfected security interest in virtually all the assets of AK Engineering; 3) individual Defendants, Patrick Canonica ("Canonica"), Carl Franson ("Franson"), and Patrick Hickey ("Hickey") (collectively, the "Individual Defendants"), three of the four shareholders of AK Engineering and the shareholders of the Debtor.

### II. BACKGROUND

On September 3, 1992, Southern Marine initiated a civil action in Suffolk Superior Court against "AK Engineering, Inc. a/k/a AK Services." Southern Marine, with leave of court, amended its complaint twice, naming additional defendants. On September 9, 1992, it obtained a preliminary injunction against American Overseas Marine Corporation ("AOMC") and General Ship Corporation ("GSC") (collectively, the "Reach and Apply Defendants") with respect to any monies owed to or standing in the name of "AK Services" up to the value of $145,932.00.

1. Rule 9027 provides in relevant part:
   (a) **NOTICE OF REMOVAL.**
   (1) WHERE FILED; FORM AND CONTENT. A notice of removal shall be filed with the clerk for the district and division within which is located the state or federal court where the civil action is pending. The notice shall be signed pursuant to Rule 9011 and contain a short and plain statement of the facts which entitle the party filing the notice to remove, contain a statement that upon removal of the claim or cause of action the proceeding is core or non-core and, if non-core, that the party filing the notice does or does not consent to entry of final orders or judgment by the bankruptcy judge, and be accompanied by a copy of all process and pleadings.
   (2) TIME FOR FILING; CIVIL ACTION INITIATED BEFORE COMMENCEMENT OF THE CASE UNDER THE CODE. If the claim or cause of action in a civil action is pending when a case under the Code is commenced, a notice of removal may be filed only within the longest of (A) 90 days after the order for relief in the case under the Code, (B) 30 days after entry of an order terminating a stay, if the claim or cause of action in a civil action has been stayed under § 362 of the Code, or (C) 30 days after a trustee qualifies in a chapter 11 reorganization case but not later than 180 days after the order for relief.…
   (d) **REMAND.** A motion for remand of the removed claim or cause of action shall be governed by Rule 9014 and served on the parties to the removed claim or cause of action.
   Fed.R.Bankr.P. 9027.

Prior to the filing of the first amended complaint, AK Services intervened in the civil action. On January 20, 1993, as a result of its default, partial judgment was entered against AK Engineering in the amount of $145,932.00. AK Services was not denominated as an alternative name for AK Engineering in the partial judgment that entered on January 20, 1993.

Shawmut moved to intervene in the civil action. Its motion was allowed on May 13, 1993, before the filing of the second amended complaint in which Southern Marine added Canonica, Franson and Hickey as additional defendants. Shawmut also filed a verified complaint, containing four counts. Prior to Shawmut's intervention, Southern Marine and Shawmut submitted to the Superior Court a "Stipulation and Order to Subordinate Equitable Attachment" in which they agreed that any monies owed to AK Engineering by the Reach and Apply Defendants were subject to and subordinate to the all asset security interest held by the Bank. The state court approved the stipulation on September 30, 1992.

The second amended complaint now before this Court contains eight counts. Through Count I, Southern Marine seeks damages in the amount of $145,932.00 for breach of a contract it had with AK Engineering whereby it was to completely overhaul, rebuild, and prepare for full operation two boilers of a marine vessel known as the SS Cape Avinoff. Through Counts II and VIII, Southern Marine seeks damages for violation of Massachusetts General Laws ch. 93A. In Count III, Southern Marine states a claim for *quantum meruit*. In Counts IV and V, Southern Marine seeks to reach and apply monies allegedly owed by AOMC and GSC. Finally, Counts VI and VII contain demands for declaratory relief. Specifically, in Count VI, Southern Marine seeks a determination that in an effort to hinder, delay and defraud creditors, AK Engineering transferred to and allowed AK Services, Fore River Shipyard & Iron Works, Inc. ("Fore River"), and AK Technical Services Mid–Atlantic, Inc. ("AK Technical") (collectively, the "Corporate Defendants") to use all of AK Engineering's tangible and intangible assets; that the Corporate Defendants were formed by the sole officers and directors of AK Engineering, who are the real parties in interest; that the Corporate Defendants are the alter egos of and are controlled and exclusively directed by the officers and directors of AK Engineering; and that as a result of the transfer of assets, AK Engineering was rendered insolvent. In Count VII, Southern Marine alleges that Canonica, Franson and Hickey entered into arrangements with AK Technical and AK Services whereby they were paid money that otherwise would be due and owing AK Engineering. It seeks similar relief against the Individual Defendants. In particular, it asks for a resolution of the following issues:

(1) whether the transfer of the tangible and intangible assets from AK Engineering to AK Services, Inc. and AK Technical were fraudulent transfers; (2) whether the payments from AK Services, Inc., and AK Technical to Canonica, Franson and Hickey were fraudulent; (3) whether AK Services, Inc., and AK Technical are alter egos of Canonica, Franson and Hickey requiring that the corporate identities should be disregarded; (4) whether Canonica, Franson and Hickey are now personally liable for the legal obligations due and owing Southern as a result of AK Engineering becoming insolvent; and (5) whether the corporate veil of AK Engineering, AK Services and/or AK Technical should be pierced and Canonica, Hickey and Franson held liable for the legal obligations of AK Engineering.

Southern Marine amended complaint contains a claim for a jury trial "as to all issues so triable."

In its complaint, Shawmut alleges that it is owed at least $238,607.67 under a Demand Note and Credit Agreement executed by AK Engineering. It also seeks declaratory relief with respect to 1) the validity of its security interest in the assets of AK Engineering whether standing in the name of the Corporate Defendants, the Reach and Apply Defendants or the Plaintiff; and

2) the priority of its security interest in the assets of the Corporate Defendants, if Southern Marine succeeds in proving that one or more of them received fraudulent conveyances from AK Engineering or is the alter ego of AK Engineering or is a successor corporation of AK Engineering.

## III. LEGAL PRINCIPLES

### A. Remand

■ Section 1452(b) of title 28 permits the court to which a claim or cause of action has been removed to remand such claim or cause of action "on any equitable ground." 28 U.S.C. § 1452(b). In *Seale v. Owens & O–M Management Group, Inc.,* 134 B.R. 181 (Bankr.E.D.La.1991), the court identified the following equitable grounds for remand:

> (1) forum non conveniens; (2) a holding that, if the civil action has been bifurcated by removal, the entire action should be tried in the same court; (3) a holding that a state court is better able to respond to questions involving state law; (4) expertise of the particular court; (5) duplicative and uneconomic effort of judicial resources in two forums; (6) prejudice to the involuntarily removed parties; (7) comity considerations; and (8) a lessened possibility of an inconsistent result.

*Id.* at 184, *citing, Browning v. Navarro,* 743 F.2d 1069, 1076 n. 21 (5th Cir.1984).

### B. Abstention[2]

#### 1. Mandatory Abstention (28 U.S.C. § 1334(c)(2))

■ Mandatory abstention is required upon proof of the following elements: (1) the motion must be made timely; (2) the claims must be based on state law and is [sic] only 'related to' the case under title 11; (3) the claim could not

have been brought in federal court, absent the court's bankruptcy jurisdiction; and (4) the court finds that a timely resolution of the claim can occur in state court.

134 B.R. at 185, *citing, O'Rourke v. Cairns,* 129 B.R. 87, 90 (E.D.La.1991).

#### 2. Discretionary Abstention (28 U.S.C. § 1334(c)(1))

■ In *In re Republic Reader's Serv., Inc.,* 81 B.R. 422 (Bankr.S.D.Tex.1987), the court identified the following twelve factors pertinent to a decision to voluntarily abstain from a proceeding:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of ... [the] ... docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

**2.** Section 1334(c) provides in relevant part:

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case

under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction....

28 U.S.C. § 1334(c)(1)–(2).

*Id.* 81 B.R. at 429.[3]

## IV. THE ARGUMENTS OF THE PARTIES

### A. Southern Marine

Southern Marine asks this Court to remand or, alternatively, to abstain from determining this adversary proceeding. Southern Marine suggests that remand of this case is appropriate for the following reasons: 1) to avoid duplication of efforts (the state court presiding over this case had scheduled, but had not held, a pre-trial conference); 2) to avoid the improper exercise of jurisdiction over non-debtor codefendants; 3) to avoid a situation in which the Plaintiff cannot obtain "complete judgment involving 'non-core' proceedings against parties that are not debtors in this court;" and 4) to avoid complications from Southern Marine's demand for a jury trial.

With respect to its abstention request, Southern Marine refers to both 28 U.S.C. § 1334(c)(1) and (c)(2). While not specifically arguing that mandatory abstention is required, Southern Marine suggests that absent the bankruptcy proceeding there would be no basis for federal jurisdiction. This Court is puzzled by this argument since a review of Southern Marine's second amended complaint reveals that the third element required for mandatory abstention noted by the *Seale* court, 134 B.R. at 184, is lacking here. There is diversity of citizenship (Southern Marine is a New Jersey corporation that does business in Massachusetts; all the defendants are either Massachusetts corporations or Massachusetts residents, except AK Technical, which is a Pennsylvania corporation, and Franson, who is a Maine resident) and the amount in controversy exceeds $50,000. *See* 28 U.S.C. § 1332(a)(1). Southern Marine does not allege in its second amended complaint or in its Motion for Remand that its principal place of business is in Massachusetts. *See* 28 U.S.C. § 1332(c).[4] Accordingly, the focus on mandatory and discretionary abstention is misplaced—a topic that will be discussed in greater detail below.

### B. Shawmut Bank

Shawmut opposes Southern Marine's remand request for several reasons. It argues that the state court litigation 1) directly affects property of the bankruptcy estate of AK Services; 2) is nothing more than an attempt to resolve a claim; 3) cannot be resolved in a timely fashion in the state court; 4) is not necessary for the convenience of the parties since both the bankruptcy court and the Suffolk Superior Court are located in Boston; 5) does not require the special expertise or resources of the state court since the bankruptcy court routinely deals with fraudulent transfers; and 6) would not entail any duplication of efforts by the parties or the Court since the case has been pending for about one year. Shawmut also argues that the litigation is intended to effectuate an "end-run around this Chapter 11 case and this and related debtors' creditors"—a perplexing argument in view of Southern Marine's commencement of its suit against AK Engineering approximately nine months before AK Services filed its bankruptcy petition.

Moreover, Shawmut maintains that it is the real party in interest in the action since any assets transferred by AK Engineering to the Debtor were and remain subject to its security interest and any recoveries by

**3.** *In re Republic Reader's Serv., Inc.* was decided prior to the 1991 amendment to Fed.R.Bankr.P. 5011. The amendment deleted the language limiting the role of the bankruptcy court to the filing of a report and recommendation for disposition of the abstention motion with the district court.

**4.** The court in *In re Branded Prods., Inc.,* 154 B.R. 936 (Bankr.W.D.Tex.1993), noted that abstention has "on occasion been mistakenly read as a limitation on subject matter jurisdiction in the bankruptcy context (hence the oxymoron *mandatory abstention*)." *Id.* at 940 (citations omitted). The court added:

> While the relief accorded in response to a motion to dismiss for lack of subject matter jurisdiction and a motion to abstain would be essentially the same (i.e., dismissal), the confusion is nonetheless pernicious, because it presumes a limitation on the subject matter jurisdiction of the district court not in fact present in section 1334.

*Id.* (citations omitted). Southern Marine's position reflects this widespread confusion.

Southern Marine would be subject to its security interest. Finally, Shawmut states that "permitting a forum that does not have a responsibility to the Debtor's creditors, or otherwise provide those creditors with access to that forum, to retain the Civil Action, would be an inappropriate use of this Court's ability to abstain"—a magnanimous position in view of its asserted priority ahead of all other creditors with respect to any monies or assets recovered by Southern Marine.

### C. Joseph S.U. Bodoff, Trust Mortgagee of AK Engineering

In his opposition, Bodoff, who is neither a plaintiff nor a defendant in the state court action and whose standing to oppose Southern Marine's motion, therefore, is questionable, states that on or around September 1, 1992, AK Engineering executed a Trust Indenture and Security Agreement (the "Trust Indenture"), naming him as Trust Mortgagee. He avers that he holds a security interest in certain assets in possession of the Debtor, which were owned by AK Engineering. According to the Trust Mortgagee, he never released the security interest in the assets in the possession of the Debtor. Moreover, he avers that of the approximately 218 creditors of AK Engineering holding claims in excess of $2 million, he has received assents to the Trust Indenture from 139 creditors holding claims in excess of $1.62 million, but not from Southern Marine. The Trust Mortgagee states that he was negotiating with the Debtor for the payment to AK Engineering of monies in settlement of claims that AK Engineering has against the Debtor, including the claim that the Debtor is using assets of AK Engineering without compensating it for those assets. Since the Trust Mortgagee indicates that he would distribute the settlement proceeds among Shawmut and the creditors assenting to the Trust Indenture, he maintains that Southern Marine is attempting to gain an advantage over other creditors that assented to the Trust Indenture and the orderly liquidation of AK Engineering's assets. Accordingly, Bodoff maintains that it is in the best interest of the Debtor, its creditors

and the estate that Southern Marine's motion be denied.

### 4. Canonica, Franson and Hickey

In their opposition, the principals of AK Services, who together with Arthur Faherty ("Faherty") were the principals of AK Engineering, reveal that AK Engineering ceased doing business in mid-August of 1992 because Shawmut allegedly revoked its line of credit. They indicate that on August 17, 1992, prior to the execution by AK Engineering of the Trust Indenture, they formed the Debtor corporation and, at the same time, Faherty formed Fore River. They further indicate that in December of 1992 they arranged for the purchase from Shawmut, with the Trust Mortgagee's approval, of certain assets of AK Engineering for $113,000.

The Individual Defendants maintain that since Southern Marine seeks to seize the assets of AK Services and recover assets that the Debtor allegedly conveyed to them fraudulently, this Court is the convenient and appropriate jurisdiction for untangling "the web of creitors' [sic] and Debtor's interests" presented. In short, the Individual Defendants argue that this is a "core" proceeding that can be handled as expeditiously by this Court as by the state court.

### 5. The Debtor

With respect to the equitable grounds for remand, the Debtor maintains that there would be no duplication of judicial resources since Southern Marine's second amended complaint was filed in May of 1993, the Individual Defendants filed their answers in this adversary proceeding approximately two months ago, and the case had just reached the discovery scheduling stage with minimal state court involvement. The Debtor also maintains that there would be little prejudice to Southern Marine since its claim will be considered by this Court either in the reorganization process or the claims allowance process. It adds that refusal to remand the case would eliminate the potential for inconsistent results stemming from findings made by the state court upon remand and findings made

by this Court in the claims allowance process. Finally, like the other parties, the Debtor notes that the bankruptcy court is a court just as convenient as the state court and there are no particularly unique or complex issues present in this case.

With respect to the abstention issue raised by Southern Marine, the Debtor states that mandatory abstention does not apply because there are numerous core proceedings contained in the second amended complaint,[5] including the allowance of Southern Marine's claim against the Debtor, as well as the claims of Shawmut and the Trust Mortgagee, *see* 28 U.S.C. § 157(b)(2)(B); fraudulent transfers of the Debtor's assets, *see id.* § 157(b)(2)(H); a significant effect on the Debtor's estate, *see id.* § 157(b)(2)(A); and an effect on the debtor-creditor relationship. *Id.* at § 157(b)(2)(*O*).

With respect to discretionary abstention, the Debtor correctly notes the overlap between the criteria utilized for determining remand and abstention motions. Thus, the Debtor emphasizes the impact of the litigation on determining the assets of the estate and the allowance of various and competing claims.

## V. DISCUSSION

With respect to a decision to abstain or remand,

[c]ourts have mixed both types of abstention in determining whether remand is appropriate. For example, in *Cook v. Griffin,* 102 B.R. 875, 877 (N.D.Ga.1989), the court noted that the 'provisions for mandatory abstention are strong factors suggesting equitable remand under § 1452(b).' Similarly, in *Thomasson v. Amsouth Bank, N.A.,* 59 B.R. 997, 1002 (N.D.Ala.1986), the court wrote that '[a]lthough this court has found that it is not necessary to directly consider abstention (and there is some question whether the mandatory abstention would be applicable in this case), the congressional mandate of abstention in certain 'related to' cases enhances the importance of comity as an equitable ground for remand.'

*O'Rourke,* 129 B.R. at 90. Moreover, as the *O'Rourke* court noted, there is a conceptual debate as to whether abstention may be used as a procedural device to return a case to the state court since there is no state claim pending that can proceed while the federal court suspends its jurisdiction. Accordingly, the *O'Rourke* court concluded that "[r]emand seems the theory which rests on firmer theoretical ground...." *Id.* at 89. The court in *In re Branded Prods., Inc.,* 154 B.R. 936 (Bankr. W.D.Tex.1993), explained:

... federal courts do not effectively respond to removed cases by abstaining

---

**5.** Section 157 of title 28 provides in relevant part:

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate ... and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12 or 13 of title 11 ...;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmation of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship....

28 U.S.C. § 157(b)(1)–(2).

from hearing the case, for that would not send the case back to state court. The usual procedural device employed to "abstain" is to *dismiss* the matter pending before the federal tribunal, so that the parallel matter can proceed in the alternate forum (e.g., state court, administrative board). Invoking abstention in the context of a removed case would result (in the usual case) in *eliminating* the lawsuit. Remand, on the other hand, *preserves* the lawsuit, without disturbing original filing dates or such service of process as may have been accomplished before the suit was removed to federal court. Again, removal and remand contemplate *one action*, the question presented being *which tribunal* handles it. Abstention, on the other hand, contemplates *two actions* (or the potential for two actions), the question presented being *which action* will take precedence and go forward first (or in lieu of the other).

*Id.* at 940 (emphasis in original) (citations and footnotes omitted). This court agrees with the Texas court's analysis. The focus here should be on equitable grounds for remand, which may encompass consideration of some of the elements pertinent to a decision to abstain. Accordingly, the Court shall deny Southern Marine's alternative request to abstain and consider only the Motion to Remand, which motion requires consideration of the nature of this Court's jurisdiction.

■■■ Courts have held that "a proceeding is core under section 157 only if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Wood*, 825 F.2d 90, 97 (5th Cir.1987). A proceeding is "related to" a bankruptcy case if its resolution will affect the property of the estate available for distribution to creditors, *Pettibone Corp. v. Easley*, 935 F.2d 120, 123 (7th Cir.1991), or if the outcome could conceivably have an effect on the administration of the bankruptcy estate. *In re Wood*, 825 F.2d at 93; *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984). Moreover, where a "plaintiff alleges liability resulting

from the joint conduct of the debtor and nondebtor defendants, bankruptcy court jurisdiction exists over all claims under § 1334." 825 F.2d at 94 (footnote omitted).

■■ In its second amended complaint, Southern Marine does not properly specify, in each count, the defendants against whom it is seeking relief. Accordingly, the Court's ability to analyze its claims is limited. Nevertheless, the claims fall into several distinct categories—those that are unrelated to the bankruptcy case, those that are clearly "non-core" but are "related to" the Debtor's bankruptcy case, and those that may fit within the nonexhaustive list of "core" proceedings set forth in section 157(b)(2) of title 28. In particular, the prepetition breach of contract and Mass.Gen. Laws ch. 93A claims that Southern Marine has against AK Engineering and the Corporate and Individual Defendants, other than the Debtor, to the extent that they do not stem from the joint conduct of all the defendants in the state court litigation, may be unrelated to the bankruptcy case, as their resolution would have no affect on the distribution to the Debtor's creditors or affect the administration of the Debtor's bankruptcy case. Accordingly, this Court would have no jurisdiction over these claims. *See* 28 U.S.C. § 1334(b) and § 157(b)(1).

The fraudulent conveyance claims, the alter ego claims, and the successor liability claims set forth in Counts VI and VII of the second amended complaint, on the other hand, are at least "related to" the Debtor's bankruptcy case. Indeed, if Southern Marine filed a proof of claim in the Debtor's bankruptcy case, the ensuing controversy would be "core." *See Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (the claims adjustment process is at the core of the bankruptcy court's equity jurisdiction). Since this action was commenced prior to the bankruptcy case, except as noted above, no substantive right provided by title 11 is present, and the case could not have arisen only in the context of a bankruptcy case. Thus, the majority of claims and causes of action

that could conceivably affect the Debtor's estate are "non-core" and merely "related to" the bankruptcy case. These claims would include any constructive trust remedies that are implicit in Southern Marine's fraudulent conveyance, alter ego and successor liability claims. *See In re Branded Prods., Inc.*, 154 B.R. at 945.

Turning to the equitable grounds for remand, the Court notes that there will be no duplication of effort by the state and bankruptcy court, there will be no inconvenience to the parties because both courts are local and there are no unique or complicated issues in this case that require the special expertise of the state court. Moreover, the Debtor's choice of the bankruptcy forum is deserving of "great weight." *See Branded Prods.*, 154 B.R. at 947; *In re El Paso Pharm., Inc.*, 130 B.R. 492, 497 (Bankr. W.D.Tex.1991). These considerations militate against remanding this case to the state court.

On the other hand, the Court finds that there would be prejudice to Southern Marine that would stem from a decision not to remand. Southern Marine lacks standing to prosecute its fraudulent conveyance actions against the Debtor's principals and the remaining Corporate Defendants in this Court. *See* 11 U.S.C. §§ 544(b), 550, and 1107.[6] *Cf. Fleet Nat'l Bank v. Doorcrafters (MI of VT) (In re North Atlantic Millwork Corp.)*, 155 B.R. 271, 281 (Bankr. D.Mass.1993) (Assignee of preference claims lacked standing to prosecute claims in converted chapter 11 case). Moreover,

Southern Marine's alter ego and successor liability claims are inextricably intertwined with its fraudulent conveyance claims and arise out of the same transactions. Any attempt to sever these claims from the fraudulent conveyance claims would be a waste of time and money. Additionally, the Court doubts that the Debtor would advance the argument that it received property fraudulently conveyed to it. Likewise, the Court has difficulty envisioning a scenario in which the Debtor would initiate proceedings against its principals to recover property they caused the Debtor to convey to them. Finally, it is unlikely that a Chapter 7 or 11 trustee would voluntarily cause the Debtor's estate to be similarly scuttled. Under these circumstances, Southern Marine's claims could languish while the Debtor largely would be in the driver's seat with respect to the claims objection process. If, as is often the case, this process was not initiated until after plan confirmation or the conversion of the case to Chapter 7, considerable delay in the liquidation of Southern Marine's claims could result. Therefore, the Court is not persuaded that it could oversee the liquidation of Southern Marine's claims any more expeditiously than the state court. Moreover, since the claims in this case are merely "related to" the bankruptcy case, involve third parties over which the Court would not have jurisdiction absent the bankruptcy, and a jury trial has been claimed, inherent delays exist with respect to this Court's obligation to issue a report and recommendation to the district court

---

**6.** Section 544(b) provides in relevant part:

The *trustee* may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b) (emphasis added). Section 550(a) provides in relevant part:

... to the extent that a transfer is avoided under section 544 ... the *trustee* may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a) (emphasis added). Finally, section 1107 provides:

(a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

11 U.S.C. § 1107(a).

with respect to its findings and conclusions of law, as well as the disposition of the jury trial demand. *See* 28 U.S.C. § 157(c); *Branded Prods.*, 154 B.R. at 947–50; *In re Chestnut Hill Mortgage Corp.*, 156 B.R. 111 (Bankr.D.Mass.1993).

Although there exists the potential for different results if the state court and this court reach different conclusions with respect to Southern Marine's claims (assuming Southern Marine files a claim against the Debtor's estate and the Debtor objects to the claim, which it now lists on its schedules as disputed), the potential for disparate results, does not compel a different conclusion, particularly where all but one of the elements necessary for mandatory abstention are present, *see Seale*, 134 B.R. at 185, and several of the factors considered for discretionary abstention are compelling, *see Republic Reader's Serv.*, 81 B.R. at 429. In short, this Court does not view the reorganization process as so overriding a goal as to ignore the possibility that exists in this case that the Debtor may be attempting to reorganize with fraudulently conveyed assets.

As the court in *Branded Prods.* noted, "[w]e are thus left with a considerable hodgepodge." 154 B.R. at 952. Compounding these problems, Southern Marine has not moved to impose a constructive trust against the assets it alleges AK Engineering fraudulently conveyed to AK Services. Nor has it moved to sever its claims against non-debtors or to obtain relief from the automatic stay to either liquidate or collect its claim against the Debtor in the state court. Thus, even if this Court allows the Motion to Remand, Southern Marine would be precluded by the automatic stay from taking any steps to liquidate or collect its claims against the Debtor's bankruptcy estate. Nevertheless, as presently postured, this Court finds that remanding this case to the state court is the most equitable and efficient means of disposing of Southern Marine's claims that involve nondebtors and non-core matters.[7]

## VI. CONCLUSION

In accordance with the foregoing, the Court hereby allows Southern Marine's Motion for Remand. Southern Marine's alternative Motion for Abstention is denied.

---

7. As a practical matter, if Southern Marine prevails with respect to its claims against the Debtor or either in this Court in claims litigation (assuming a proof of claim is filed by or on behalf of Southern Marine) or in the state court upon a showing of cause for lifting the automatic stay, and the Debtor's assets are determined to belong in whole or in part to AK Engineering, subject to Shawmut's security interest in the approximate amount of $283,000 and the Trust Indenture, it would appear that a reorganization of the Debtor could be more problematic than at first blush. Nevertheless, if the Debtor is sanguine as to the merits of its defense to Southern Marine's claims, and Southern Marine is sanguine that the bankruptcy court is not the place for the creditors of either AK Engineering via an involuntary petition or AK Services to attempt to recover fraudulent conveyances or preferences, the Debtor should not be constrained from going forward with its plans to reorganize.