In re Harold GOLD and
Kitty Gold, Debtors.

Diversified Mortgage Co.,
Inc., Plaintiff,

v.

Harold M. Gold, Catherine A. Gold, D.I.
Investment Partnership, CFX Bank,
CFX Funding, LLC and Michael L.
Buckman, Trustee, Defendants.

Bankruptcy No. 98–47270–JFQ.
Adversary No. 98–4324.

United States Bankruptcy Court,
D. Massachusetts.

April 19, 2000.

Walter W. Jabs Jr., Marlborough, MA, for Debtors.

Matthew D. Rockman, Rockman, & Kachajian, Northborough, MA, Trustee.

### Decision

JAMES F. QUEENAN, Bankruptcy Judge.

The defendants D.I. Investment Partnership ("D.I.") and Michael L. Buckman, Trustee ("Buckman") (collectively the "Defendants") have moved to dismiss this adversary proceeding for lack of jurisdiction or, in the alternative, to dismiss on grounds of abstention. Set forth here are the grounds for a previous order denying the motion.

### I.  FACTS

The allegations of the complaint, taken as true for the purpose of this motion, disclose the following. At the time of their filing of this Chapter 7 case, Harold M. Gold and Catherine A. Gold (the "Debtors") owned two adjacent properties in Mashpee, Massachusetts. The addresses of the properties were 63 Greensward Road and 69 Greensward Road. Immediately prior to October 4, 1996, the properties were subject to the following mortgages having these face amounts and priorities:

|  | 63 Greensward Road | 69 Greensward Road |
|---|---|---|
| 1991 | $430,000 mortgage to Chase Manhattan Financial Services, Inc. | no mortgage of record |
| 1991 | $70,000 mortgage to Chase Manhattan Financial Services, Inc. | |
| 1995 | $355,000 mortgage to James Ross Freeman | |

On October 4, 1996, Diversified Mortgage Company, Inc. ("Diversified") loaned $175,000 to the Debtors. Diversified is the predecessor by assignment of The Chase Manhattan Bank as Trustee (the "Plaintiff"). The loan was secured by a mortgage describing the property at 63 Greensward Road, making it junior to the three mortgages of record. The description on the mortgage was a mistake in that both Diversified and the Debtors intended to secure the loan by a first mortgage on 69 Greensward Road. The mistake remained undiscovered for many months.

About six weeks later, on November 22, 1996, a corporation owned by the Debtor Harold M. Gold, Graphics Financial Group, Ltd., borrowed $170,000 from D.I. The Debtors executed a guaranty of this loan. The guaranty provided that it was secured by a *second* mortgage on 69 Greensward Road. Securing the guaranty was a mortgage placed on both Mashpee properties (and the Debtors' home), the mortgage on 63 Greensward Road being junior to the four prior mortgages and the mortgage on 69 Greensward Road being of record a first mortgage. The parties intended, however, that D.I. obtain only a second mortgage on 69 Greensward Road.

Thereafter, on June 19, 1997, two additional mortgages were recorded on 69 Greensward Road, one by CFX Bank and one by CFX Funding, LLC. On October 7, 1997, D.I. assigned its mortgages on 63 and 69 Greensward Road (plus the mortgage on the Debtors' home) to Buckman.

In April of 1998 Diversified discovered the mistake in the description of its mortgage. It obtained the Debtors' signature on a mortgage covering 69 Greensward Road to secure the $175,000 loan and recorded that mortgage.

As a result, at the time of the Debtors' bankruptcy filing on October 1, 1998, there were the following mortgages of record on the two properties:

| 63 Greensward | 69 Greensward |
|---|---|
| -Mortgage to Chase Manhattan Financial Services, Inc. (recorded April 12, 1991) ($430,000) | -D.I. Mortgage (recorded December 3, 1996) ($170,000) |
| -Mortgage to Chase Manhattan Financial Services, Inc. (recorded April 12, 1991) ($70,000) | -Mortgage to CFX Bank (recorded June 19, 1997) ($7,5000,000) |
| -Mortgage to James Ross Freeman (recorded July 28, 1995) ($355,000) | -Mortgage to CFX Funding, LLC (recorded June 19, 1997) ($873,000) |
| -Diversified Mortgage (recorded October 8, 1996) ($175,000) | -Assignment of D.I. Mortgage to Michael L. Buckman, Trustee (recorded November 28, 1997) |
| -D.I. Mortgage (recorded December 3, 1996) ($170,000) | -Diversified Mortgage (recorded April 13, 1998) ($175,000) |

The value of 69 Greensward Road is less than the amount due on Diversified's mortgage.

## II. PLAINTIFF'S REQUESTED RELIEF

The Plaintiff commenced this action on December 21, 1998, a few months after the Debtors filed their Chapter 7 petition. Asserting a mutual mistake on the part of Diversified and the Debtors, the Plaintiff as Diversified's successor requests in the complaint that the 1996 Diversified mortgage be reformed so as to describe 69 Greensward Road rather than 63 Greensward Road, and that the Plaintiff be equitably subrogated to D.I.'s $170,000 first mortgage position. In a separate count, the complaint asks the court to declare that the Plaintiff holds a $175,000 first mortgage on 69 Greensward and D.I. holds a $170,000 second mortgage on 69 Greensward.

## III. DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION

The Defendants request dismissal first on the ground the court lacks jurisdiction to adjudicate this matter. This court, through reference from the district court, has "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C.A. § 1334(b) (Law.Coop.Supp.1999). "Bankruptcy judges may hear and determine all cases under title 11

and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C.A. § 157 (Law.Co-op.1988). "Core proceedings include, but are not limited to ... (K) determinations of the validity, extent, or priority of liens ...." 28 U.S.C.A. § 157(b)(1) (Law. Co-op 1988).

This is a core proceeding which I may hear and determine. In requesting a declaration that it holds a first mortgage on 69 Greensward Road with priority of D.I.'s mortgage, the Plaintiff seeks a "determination [ ] of the validity, extent, or priority of liens." 28 U.S.C.A. § 157(b)(2)(K) (Law.Co-op.1988); *see also In re Samoset Assoc.,* 654 F.2d 247, 253 (1st Cir.1981); *In re Pittsburgh Cut Flower Co., Inc.,* 118 B.R. 31, 34 (Bankr.W.D.Pa.1990).

In their memorandum of law supporting their motion, the Defendants summarily dismiss a conclusion that the court has "arising in" jurisdiction over this proceeding as a core proceeding. They do not address the aspect of the complaint requesting a determination of the validity or priority of the Plaintiff's lien. The Defendants limit their argument to the question whether this proceeding is "related to a case under title 11" over which the court has the more limited jurisdiction to "submit proposed findings of fact and conclusion of law to the district court...." *See* 28 U.S.C.A. § 157(c)(1) (Law.Co-op.1988). Taking this cue from the Defendants, the Plaintiff has limited its argument to the same question of "related to" jurisdiction.

Both parties rely on the test for "related to" jurisdiction enunciated in *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984). The court there said:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.... Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

743 F.2d at 994.

The *Pacor* test has been adopted by the fourth, fifth, eighth, ninth and eleventh circuits. *See Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784 (11th Cir.1990); *American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods, Inc.),* 885 F.2d 621 (9th Cir. 1989); *National Union Fire Ins. Co. v. Titan Energy, Inc. (In re Titan Energy, Inc.),* 837 F.2d 325 (8th Cir.1988); *Wood v. Wood (In re Wood),* 825 F.2d 90 (5th Cir. 1987); *Dogpatch Properties, Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch U.S.A., Inc.),* 810 F.2d 782 (8th Cir.1987); *A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins Co., Inc.),* 788 F.2d 994 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). The second, fifth and sixth circuits have given a similar broad interpretation of "related to" jurisdiction. *See Elscint, Inc. v. First Wisconsin Fin. Corp. (In re Xonics, Inc.),* 813 F.2d 127 (7th Cir.1987); *Kelley v. Nodine (In re Salem Mortgage Co.),* 783 F.2d 626 (6th Cir.1986); *Turner v. Ermiger (In re Turner),* 724 F.2d 338 (2d Cir.1983).

In view of the core nature of this proceeding, it is unnecessary to deal with the question of whether this is a "related to" proceeding. I will nevertheless do so briefly because the parties have dwelled on that issue.

The Defendants contend this proceeding cannot conceivably alter the Debtors' liabilities, or in any way impact upon the handling and administration of their bankruptcy estate. They apparently rely on the foreclosure sale of 69 Greensward Road which took place after the filing of the complaint. On May 17, 1999, I permit-

ted Buckman to foreclose on the property and ordered that the net foreclosure sales proceeds be held in escrow by Buckman's attorney pending final judgment in the present adversary proceeding. Buckman's lawyer presently holds in escrow the net foreclosure sales proceeds of approximately $270,000. The bankruptcy estate makes no claim to these proceeds. They are subject only to the claims of the Plaintiff and the Defendants. (D.I.'s agreement with Buckman in its mortgage assignment to him is that D.I. takes $140,000 of net foreclosure proceeds and Buckman takes the excess).

■ There is a fatal flaw in the Defendants' *sub silencio* argument that because the Plaintiff and the Defendants are the only claimants to the escrow fund this proceeding is not a related proceeding in that it can have no effect upon the Debtors or the administration of their bankruptcy estate. The question of jurisdiction is to be resolved based on facts existing at the time the complaint is filed, or, at the very latest, as of the time an answer is due. *Keene Corp. v. United States,* 508 U.S. 200, 207–08, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993); *Minneapolis & St. L.R. Co. v. Peoria & P.U. Ry. Co.,* 270 U.S. 580, 586, 46 S.Ct. 402, 70 L.Ed. 743 (1926); *National Union Fire Ins. Co. v. Titan Energy, Inc. (In re Titan Energy, Inc.),* 837 F.2d 325, 331 (8th Cir.1988); *Waters Corp. v. Hewlett–Packard Co.,* 999 F.Supp. 167, 171–72 (D.Mass.1998). When this complaint was filed and its answer was due, 69 Greensward Road was property of the bankruptcy estate, although it was fully encumbered. Thus the present case is quite unlike cases where the court ruled there is no "related to" jurisdiction over a dispute involving property which at the time of the complaint's filing was not part of the bankruptcy estate. *See, e.g., Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784 (11th Cir.1990) (no "related to" jurisdiction over claim brought by debtor's landlord against purchaser of estate assets); *In re Hall's Motor Transit Co.,* 889 F.2d 520 (3d Cir.1989) (no "related to" jurisdiction concerning zoning rights of party who had

purchased property from bankruptcy estate); *Fietz v. Great Western Sav. (In re Fietz),* 852 F.2d 455 (9th Cir.1988) (no "related to" jurisdiction over cross-claim by debtor's wife against mortgagee where at time of cross-claim mortgaged property had passed from bankruptcy estate to debtor upon confirmation of debtor's Chapter 13 plan); *Turner v. Ermiger (In re Turner),* 724 F.2d 338 (2d Cir.1983) (no "related to" jurisdiction over debtor's claim for conversion of assets exempted from bankruptcy estate).

■ There is also a principled distinction between this proceeding and one in which the initial complaint involves only nondebtor parties and the debtor or the estate is later brought in through a third party complaint. That was the situation in *Pacor,* where the court held it had jurisdiction only over the dispute encompassed by the third party complaint. Here the Debtors are named defendants. Because the complaint involves prepetition events, the rights of the estate have been implicated from the beginning. Indeed, there is "related to" jurisdiction over proceedings where neither the debtor nor the estate is a named defendant if the defendant has indemnification rights against the debtor or the estate. *See Philippe v. Shape, Inc.,* 103 B.R. 355 (D.Me.1989); *Dogpatch Properties, Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch U.S.A., Inc.),* 810 F.2d 782 (8th Cir.1987); *A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins Co., Inc.),* 788 F.2d 994 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986).

■ It must be kept in mind, moreover, that under *Pacor* the test is whether the outcome of the proceeding can "conceivably" have "any" effect on the bankruptcy estate. *See also Celotex Corp. v. Edwards,* 514 U.S. 300, 307–08, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995); *In re Marcus Hook Dev. Park, Inc.,* 943 F.2d 261, 264 (3d Cir.1991); *Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.),* 930 F.2d 1132, 1141 (6th Cir.1991), *cert. dismissed,* 503

U.S. 978, 112 S.Ct. 1605, 118 L.Ed.2d 317 (1992); *Work/Family Directions, Inc. v. Children's Discovery Ctrs., Inc. (In re Santa Clara County Child Care Consortium)*, 223 B.R. 40, 44–45 (1st Cir. BAP 1998); *Cenith Partners, L.P. v. Hambrecht & Quist, Inc. (In re VideOcart, Inc.)*, 165 B.R. 740, 743 (Bankr.D.Mass. 1994); *Southern Marine & Indus. Servs., Inc. v. AK Eng'g, Inc. (In re AK Servs., Inc.)*, 159 B.R. 76, 84 (Bankr.D.Mass.1993). There are several ways that the outcome of this litigation, as of the date of its commencement, could have had an effect on administration of this estate. Because 69 Greensward Road was then property of the bankruptcy estate, the Chapter 7 trustee might have sold the property. Such a sale was a possibility even though the property was fully encumbered. Trustees, at the request of lienholders, occasionally sell fully encumbered property and hold the proceeds in escrow where, as here, there is a dispute over the existence or priority of the liens. Even in the absence of such a dispute, trustees sometimes sell fully encumbered property in order to obtain the fair market value of the property, which is typically more than what is obtainable through a foreclosure auction. A private sale by a trustee can therefore benefit both the lienholders by maximizing their recovery and the estate by minimizing the amount of an unsecured deficiency claim. Lenders are occasionally willing to give the estate a "carve out" for doing this.

There are other possible ways that this litigation can affect estate administration. This litigation will determine whether the Plaintiff or D.I. (or Buckman) is an unsecured creditor. When the complaint was filed, and to a lesser extent today, it was conceivable that there might be estate funds available for distribution to whichever party loses this case. That was so even though the Debtors reported no assets free of liens and unexempted. They may have failed to report some assets. Or there may be assets subject to the estate's claim of ownership because the Debtors transferred them prior to the bankruptcy filing in fraud of creditors or as a preferential payment to the transferee.

## IV. DEFENDANTS' MOTION TO DISMISS ON GROUNDS OF ABSTENTION

■ Defendants argue alternatively that this court should abstain. The statute granting this court jurisdiction identifies two forms of abstention—mandatory and permissive. Mandatory abstention is provided for as follows:

> Upon the timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such a proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C.S. § 1334(c)(2) (Law.Co-op.Supp. 1999).

■ The statute contains six requirements: (1) the motion to abstain is timely, (2) the proceeding is based on a state law cause of action, (3) the proceeding is related to a case under title 11 but does not arise under title 11, (4) the action could not have been commenced in federal court absent jurisdiction under 28 U.S.C. section 1334, (5) the state court action has commenced, and (6) the state court action can be timely adjudicated. *See id.; see also Goya Foods, Inc. v. Unanue–Casal (In re Unanue–Casal)*, 164 B.R. 216, 221 (D.P.R. 1993), *aff'd*, 32 F.3d 561 (1st Cir.1994), *cert. denied*, 513 U.S. 1149, 115 S.Ct. 1098, 130 L.Ed.2d 1066 (1995). These criteria have not been met here. As discussed above, this proceeding is included in the statutory definition of a core proceeding arising under title 11. Moreover, due to the diversity of the parties' citizenship, this action could have been commenced in federal court absent the bankruptcy filing.

The Defendants admit this in their motion. Finally, no state court action has been commenced, and timely state court adjudication is therefor moot. Abstention, therefore, is not mandatory.

■■■ The law also provides for permissive abstention. *See* 28 U.S.C.A. § 1334(c)(1) (Law.Co-op.Supp.1999). The statute reads: "Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." *Id.* The statute provides no standard for the type of situations in which abstention is appropriate. As a result, a multiple factor test has developed. *See Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.),* 81 B.R. 422 (Bankr.S.D.Tex.1987). The enumerated factors are

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than the form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of my docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*Id.* at 429. Many courts have adopted and applied these factors. *See, e.g., In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.,* 6 F.3d 1184, 1189 (7th Cir.1993); *In re Tucson Estates, Inc.,* 912 F.2d 1162, 1167 (9th Cir.1990); *Southern Marine & Indus. Servs., Inc. v. AK Eng'g, Inc. (In re AK Servs., Inc.),* 159 B.R. 76, 80–81 (Bankr. D.Mass.1993).

■■■ In evaluating these factors, the Supreme Court cautions that "[a]bstention ... is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The Court characterizes the doctrine of abstention as "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.* (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959)). The party urging the court to abstain bears the heavy burden of proving some exceptional circumstances to justify the abstention. *See, e.g., Paul Revere Variable Annuity Ins. Co. v. Thomas,* 66 F.Supp.2d 217, 221 (D.Mass. 1999).

Several of the factors favoring abstention are not present. There is no related proceeding which has been commenced in state court (factor 4). The burden on the bankruptcy court's docket is negligible (factor 9). No evidence of forum shopping has been suggested (factor 10). There has been no jury demand by the Defendants (factor 11). The remaining factors (1, 2, 3, 5, 6, 7, 8, and 12) do not, present the "extraordinary circumstances" necessary to invoke permissive abstention. Indeed, application of some favors refusal to abstain. The administration of this estate (factor 1) will benefit from a quick resolution of this dispute. Given that no proceeding has even been filed in state court, this court can resolve the dispute more quickly. The state law issue (factor 2) concerning the validity and priority of the mortgages does not predominate over the bankruptcy issue of determining the validity, extent and priority of the liens on the property. The two issues are closely in-

tertwined. The applicable state law (factor 3) of reformation due to mutual mistake is neither unsettled nor difficult enough to warrant abstention. As discussed above, this dispute concerns a core matter in substance (factor 7), not merely form. While nondebtor parties are present (factor 12), the Debtors are named Defendants in this case.

In short, although the complaint involves state law issues, those issues do not predominate, they do not require unusual expertise, and no action has commenced outside of this court. I therefore decline to abstain in the exercise of sound discretion. *See, e.g., In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.,* 6 F.3d 1184 (7th Cir.1993) (abstention inappropriate without unsettled issue of state law and active state court proceeding); *Weinberg v. Boyle (In re Weinberg),* 153 B.R. 286 (Bankr. D.S.D.1993) (abstention appropriate when special expertise required and when bankruptcy docket overfull); *Altchek v. Altchek (In re Altchek),* 119 B.R. 31 (Bankr. S.D.N.Y.1990) (no abstention where no pending state court action and no unsettled question of state law); *Double TRL, Inc. v. F.S. Leasing, Inc. (In re Double TRL, Inc.),* 65 B.R. 993 (Bankr.E.D.N.Y. 1986) (no abstention if no important state interest involved). The principles of judicial economy require a speedy resolution of the core matter before this court. *See Levovitz v. Verrazano Holding Corp. (In re Verrazano Holding Corp.),* 86 B.R. 755 (Bankr.E.D.N.Y.1988) (court must consider judicial economy in determining whether to abstain).